**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ROBERT ALLAN COWAN,

                Petitioner,

vs.                          Case No.:    3:14-cv-370-J-32MCR
                                                   3:09-cr-387-J-32MCR

UNITED STATES OF AMERICA,

                Respondent.

_____/

## <u>ORDER</u>

      This case is before the Court on Petitioner Robert Allan Cowan's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Civ. Doc. 1).[1] The United States has responded (Civ. Doc. 8), and Petitioner has replied (Civ. Doc. 13). The Court has also considered Petitioner's counseled supplemental memorandum (Civ. Doc. 25), and the United States' Supplemental Response (Civ. Doc. 28). Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he

---

[1]     References to the docket in the underlying criminal case, <u>United States vs. Robert Allan Cowan</u>, Case No. 3:09-cr-387-J-32MCR, will be denoted as "Crim. Doc. __." Citations to the civil § 2255 docket, Case No. 3:14-cv-370-J-32MCR, will be denoted as "Civ. Doc. __."

alleges are true, he still would not be entitled to any relief).  For the reasons set forth below, Petitioner's Motion to Vacate is due to be denied.

## I.     Background

On August 18, 2009, Petitioner dropped off his four-year-old daughter for her first day of school.  Petitioner went on his way to work at a local middle school, where he was employed as a guidance counselor.  Shortly after he left, Petitioner's daughter followed her teacher back to her desk, where the daughter made statements suggesting that Petitioner was sexually abusing her.  Alarmed, the teacher and the school's director contacted the Florida Department of Children and Families ("DCF").  DCF agents interviewed the daughter, during which she made additional statements suggesting that Petitioner was molesting her.  A criminal investigation ensued.  Law enforcement officers searched Petitioner's home and media devices, where they discovered that Petitioner had downloaded numerous graphic images and videos depicting the molestation of prepubescent and infant children.  Law enforcement further discovered that Petitioner had used his iPhone to take over a dozen pictures of his daughter in explicit and sexually suggestive poses.

A federal grand jury charged Petitioner in a seven-count Indictment on December 9, 2009. The Indictment alleged three counts of receipt and attempted receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Counts One through Three); two counts of production of child pornography, in violation of § 2251(a) (Counts Four and Five); and two counts of possession of child pornography, in violation of § 2252(a)(4)(B) (Counts Six and Seven).  (Crim. Doc. 1) (Indictment).

Petitioner proceeded to trial despite defense counsel's (accurate) assessment that the evidence was strong.  (See Crim. Doc. 95 at 9).  The United States introduced computer forensics testimony showing that Petitioner used multiple computer devices to download and store child pornography.   Among the devices that law enforcement examined were a 24-inch iMac desktop computer, a 17-inch iMac desktop, an Apple laptop, a Toshiba external hard drive, a Maxtor external hard drive, and an iPhone.  The government's computer forensics examiner, Special Agent James Greenmun, found 29 videos and 86 still images of child pornography on the desktops and external hard drives, including the files underlying Counts One, Two, Three, Six, and Seven.  (Crim. Doc. 89 at 176-224).  There were also traces of 460 deleted images of child pornography on the two external hard drives (300 on one, 160 on the other).  Most of the videos and images were downloaded via Lime Wire – a peer-to-peer file sharing program – and had file names clearly indicative of child pornography.  Moreover, the examiner found on the Toshiba hard drive the 17 lewd images underlying Counts Four and Five, which Petitioner had taken of his daughter using his iPhone.  Petitioner deleted the photos from his iPhone and transferred them to the Toshiba hard drive, where he placed them in a folder that contained other depictions of child pornography.  (Id. at 180, 182-83).

In addition to the illicit computer files themselves, law enforcement discovered a user-created document titled "Search.pages" on Petitioner's Apple laptop, under the username "COWANR."  (Id. at 184-86).  The document was a list of search terms specific to child pornography, including "preteen," "teen," "pedo," "PTHC,"

"babyshivid," "hussyfan," and "kids need sex too." Special Agent Greenmun testified that using those search terms on Lime Wire will reliably generate search results containing child pornography. (Id. at 247-48). Many of the pornographic files on Petitioner's devices had those very terms in the file name.

After the United States rested, Petitioner took the stand. He denied downloading child pornography on purpose. (Crim. Doc. 90 at 61-62, 69-70). Petitioner claimed that he accidentally came across child pornography while searching for martial arts videos on Lime Wire. (Id. at 59-61). According to Petitioner, he would download batches of files at once (id. at 66-67), but occasionally those batches contained child pornography. He claimed if he identified illicit files, he would stop them from downloading or delete them after they had downloaded. (Id. at 69-70, 128-30). Petitioner – who minored in computer programming in college, and who by all accounts was computer-savvy – claimed that child pornography was on his computer because he forgot to check his download folders and delete unwanted files.

With respect to the 17 explicit images involving his four-year old daughter, Petitioner tried to portray them as innocent family photos. (Id. at 77-78, 114-17, 142-43). Regarding the photos underlying Count Four – which centered on the daughter's genitalia while she sat in the backseat of Petitioner's car – Petitioner claimed he took them at his daughter's insistence while driving, and without aiming the camera. (Id. at 105-07.)[2] Regarding the photos underlying Count Five, Petitioner testified that he

---

[2]    The Court gave Petitioner an obstruction-of-justice sentencing enhancement for this particular testimony. The Court added that it was "such a blatant false

4

took them while his daughter was just "dancing around" the house, even though they depicted his daughter in poses unnatural for a child or displaying her genitalia.

The jury had none of it. After deliberating for a little over two hours, the jurors returned a guilty verdict on all seven counts.

Thereafter, the Court sentenced Petitioner to 240 months in prison on each of Counts One through Three; 360 months on each of Counts Four and Five; and 120 months on each of Counts Six and Seven, all to run consecutively. (Crim. Doc. 123, Judgment). The Court noted that the Sentencing Guidelines called for a life sentence, but that exceeded the maximum sentence under the applicable statutes. (Crim. Doc. 131 at 156). However, the Court found it had authority to aggregate the sentences and run them consecutively. (Id. at 156-58). The Court explained that a significant sentence was warranted because the case involved "particularly gruesome child pornography" that led to additional offense conduct – the molestation and production of child pornography involving Petitioner's daughter. (Id. at 163-65). Additionally, the Court observed that Petitioner was calculating, manipulative, unremorseful, and unashamed. (Id. at 169). The Court explained that someone who could be convicted based on "very significant and strong evidence" and "then still deny it and try to figure out a way out of it" is someone unlikely to be rehabilitated. (Id. at 170). Because of the gravity of the offense, Petitioner's lack of remorse, and the finding that he was still a threat to the community, the Court determined that a 1,680-month prison term

statement" that it "was an affront to the court, to the jury, and to everybody who was in the courtroom." (Crim. Doc. 131 at 96-97).

was sufficient but not greater than necessary to accomplish the purposes of sentencing.  (Id. at 172-75).

Petitioner appealed his convictions and sentence, arguing (1) that the Court admitted impermissible expert testimony at trial; (2) there was insufficient evidence to support his possession and receipt convictions; (3) the Court failed to adequately explain the reasons for its sentence; (4) the Court made several guideline calculation errors; and (5) the 1,680-month sentence was substantively unreasonable.  United States v. Cowan, Appeal No. 11–15989, 2012 WL 5834582 (11th Cir. Nov. 19, 2012) (Crim. Doc. 137).  The Eleventh Circuit rejected every argument and affirmed his conviction and sentence.  The United States Supreme Court denied Petitioner's request for certiorari review.  Cowan v. United States, 133 S. Ct. 1839 (2013).

## II.    Petitioner's Motion to Vacate

Petitioner timely filed the instant Motion to Vacate.  Petitioner raises ten grounds in the Motion:  (1) that the United States' computer forensics examiner, Special Agent Greenmum, materially changed his testimony in Petitioner's subsequent state court trial, suggesting a violation of Brady v. Maryland[3]; (2) trial counsel, Charles Truncale, gave ineffective assistance by failing to hire various expert witnesses; (3) trial counsel was unprepared for trial; (4) counsel was distracted at trial by the death of his brother-in-law; (5) counsel failed to make certain objections; (6) the prosecutor made false statements to the jury; (7) sentencing counsel, Noel

---

[3]    373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963) (the prosecution has an obligation to disclose material exculpatory evidence to a defendant).

Lawrence, gave ineffective assistance by failing to object to the factual statements in the Presentence Investigation Report ("PSR"); (8) sentencing and appellate counsel, also Mr. Lawrence, did a poor job writing motions and appellate briefs; (9) Counts Six and Seven of the Indictment failed to allege the proper nexus between Petitioner's conduct and interstate commerce; and (10) the Court should reduce Petitioner's sentence in light of changes to the United States Sentencing Guidelines in 2013 regarding sex offenders.

## III.    Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.  Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.  28 U.S.C §2255(a) (2008).  Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack.  United States v. Addonizio, 442 U.S. 178, 184-86 (1979).  A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack.  United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

## A. Ground One:  Alleged <u>Brady</u> Violation Based on Special Agent Greenmun's "Changed Testimony"

After Petitioner was convicted in federal court of child pornography charges, he was tried in state court on charges of child sex abuse.  Petitioner alleges that Special Agent Greenmun gave additional, exculpatory testimony in the state trial that he did not offer in the federal trial, thereby exposing a <u>Brady</u> violation in the federal proceedings.  (Civ. Doc. 1 at 6-7; Civ. Doc. 25 at 1-12).

The gist of the relevant facts are as follows.  During the subsequent state court trial, Special Agent Greenmun testified that some of the child pornography files were located in "incomplete folders," which meant that the files did not finish downloading from Lime Wire.  (Civ. Doc. 25 at 3) (quoting Civ. Doc. 8-18 at 12).  Special Agent Greenmun further testified, in essence, that a file might not finish downloading because either "the downloading has stopped <u>or</u> someone has stopped the downloading[.]"  (<u>Id.</u> at 4) (quoting Civ. Doc. 8-18 at 27) (emphasis added).  During the federal trial, Special Agent Greenmun also testified that some of the videos were in "incomplete" folders because they did not finish downloading.  (<u>Id.</u> at 2-3) (quoting Crim. Doc. 89 at 249-50).  However – and this is where Petitioner alleges that the government withheld exculpatory evidence – Special Agent Greenmun did not further explain that a download might be incomplete because <u>either</u> the download was interrupted <u>or</u> because the user stopped the download.

Petitioner stresses that the files underlying Counts One, Two, and Three were located in "incomplete" folders.  According to Petitioner, had Special Agent Greenmun testified that a computer user <u>could</u> have been responsible for stopping the

downloads, there is a reasonable likelihood the jury would have believed his theory of innocence, i.e., that he stopped the download of illicit files once he learned what they were, and therefore he was not guilty of knowingly receiving child pornography.

To establish a <u>Brady</u> violation, Petitioner must show: (1) that the prosecution possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. <u>United States v. Vallejo</u>, 297 F.3d 1154, 1164 (11th Cir. 2002).

Petitioner's <u>Brady</u> claim fails to satisfy the second, third, and fourth prongs articulated in <u>Vallejo</u>. As to the second prong – whether the defendant possessed or could have discovered the exculpatory evidence – Petitioner already knew that a user could stop a file from downloading, and that doing so would cause a file to be located in an "incomplete folder." Indeed, Petitioner testified to that effect. He claimed that <u>he</u> stopped illicit files from downloading once he identified them, and this was why certain files were in "incomplete folders." (Crim. Doc. 90 at 128-29).

As to the third prong, the government did not suppress evidence that a computer user could stop a file from downloading. Special Agent Greenmun never denied during the federal trial that a user could stop a file from downloading, or that doing so might explain how a file could end up in an "incomplete" folder. Indeed,

Special Agent Greenmun testified in the federal trial that some of the illicit files were located in "incomplete folders," and that this meant the downloads were unfinished.

Finally, as to the fourth prong, there is not a reasonable probability that even if Special Agent Greenmun had testified that Petitioner <u>could</u> have been responsible for halting illicit files from downloading, the jury would have acquitted him.  As Special Agent Greenmun testified in the state court trial, a file could wind up in an "incomplete folder" because either the user stopped the download <u>or</u> because the download was otherwise interrupted.  Thus, the interruption of a download is not necessarily a user-directed action.  A file could end up in an "incomplete folder" due to any interference with the download – such as a disruption in the internet connection – not necessarily because the recipient halted the file transfer.

In light of abundant evidence that Petitioner intentionally collected child pornography, it is not reasonably likely that the jury would have believed that <u>Petitioner</u> stopped the downloads to prevent himself from receiving the files.  The evidence showed that Petitioner completed the download of other images of child pornography, and he "previewed" another movie before it finished downloading despite the fact that it had a file name suggestive of child pornography. (Crim. Doc. 89 at 219, 249-50).[4]  Furthermore, the government presented other evidence refuting any claim that Petitioner did not intentionally access materials depicting the sexual

---

[4]     A file whose download was incomplete would have a "T-" prefix before the file name.  (Crim. Doc. 89 at 249-50).  However, the videos underlying Counts Six and Seven lacked the "T-" prefix (<u>see id.</u> at 220-21), meaning that Petitioner completely downloaded them.

abuse of children.  For one, Petitioner maintained the "Search.pages" document, which contained a list of search terms specific to child pornography.  Second, Petitioner maintained a print collection of child erotica in a personal storage unit, indicating that Petitioner unmistakably gathered materials reflecting a sexual interest in children.  (Crim. Doc. 89 at 101-04, 106-07).  Third, in its rebuttal, the United States introduced a Maxell CD belonging to Petitioner, which had three user-created folders on it.  (Crim. Doc. 90 at 160-62).  One folder was titled "cartoon," and contained cartoon images of children being molested.  The second folder contained a combination of still images of child pornography, adult pornography, and child erotica.  The third folder was titled "movies," and contained three videos of child pornography.  Petitioner could not have retrieved those files and transferred them onto the CD accidentally.  (Id. at 162).  In short, the notion that Petitioner did not intentionally seek out child pornography was not credible.

If the jurors rejected Petitioner's theory that he was innocent because he stopped the download of illicit files, it likely had nothing to do with the jurors not knowing that a computer user has the ability to stop a download.  Rather, the jury rejected Petitioner's testimony and was convinced Petitioner sought out child pornography.  The jury was aware of Petitioner's defense, yet it convicted him because the evidence was overwhelming.  Thus, Petitioner's Brady claim fails to show a reasonable likelihood of a different outcome.  See Boschen v. United States, 845 F.2d 921, 922 (11th Cir. 1988) (defendant could not show a reasonable probability that the

outcome of the proceedings would have been different, had <u>Brady</u> evidence been disclosed, where the evidence of guilt was overwhelming).

Petitioner also contends that because he did not complete the download of the files underlying Counts One, Two, and Three, he is not guilty of receiving child pornography within the meaning of 18 U.S.C. § 2252(a)(2). Petitioner evidently thinks that only accomplished acts of receiving child pornography are a crime. This contention is frivolous. Petitioner ignores that § 2252 also criminalizes <u>attempts</u> to receive child pornography. 18 U.S.C. § 2252(b)(1).[5] Again, the evidence amply demonstrated that Petitioner attempted to do just that.

## B. Ground Six: Improper Prosecutorial Remarks

Petitioner alleges that the prosecutor made various improper remarks during closing argument. (Civ. Doc. 1 at 20-21). Petitioner procedurally defaulted this claim, however. "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." <u>Lynn v. United States</u>, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing <u>McCoy v. United States</u>, 266 F.3d 1245, 1258 (11th Cir. 2001)). Petitioner could have argued on direct appeal that the prosecutor made improper remarks in closing argument, but he did not. As such, Petitioner cannot raise this claim for the first time on collateral review.

---

[5]   Indeed, the United States indicted Petitioner for the receipt and <u>attempted</u> receipt of child pornography (Crim. Doc. 1 at 1-2), and the Court instructed the jury about attempted receipt (Crim. Doc. 91 at 52, 55).

Nevertheless, this ground fails on the merits.  First, Petitioner claims that the prosecutor misstated the record by allegedly telling the jury "that there were hundreds of photographs that had been deleted from [Petitioner's] iPhone and 'we don't know what they are.'"  (Id. at 20).  Petitioner claims this was a false statement because "the government had possession of <u>every</u> photograph that [Petitioner's] iPhone had ever taken."  (Id.) (emphasis in original).  Petitioner also claims that the statement implied that the deleted photographs "might have been, and probably were, [additional] pornographic photographs of [Petitioner's] daughter."  (Id.).

A prosecutor may not misstate the record in closing argument.  <u>Davis v. Zant</u>, 36 F.3d 1538, 1548 n.15 (11th Cir. 1994).  Nor may a prosecutor imply that he knows of additional evidence other than that presented at trial.  <u>Berger v. United States</u>, 295 U.S. 78, 88-89 (1935).  Prosecutorial misconduct warrants reversing a conviction only where the prosecutor's "remarks (1) were improper and (2) prejudiced the defendant's substantive rights."  <u>United States v. O'Keefe</u>, 461 F.3d 1338, 1350 (11th Cir. 2006).  "The defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the prosecutor's statements, the outcome of the trial would have been different."  <u>Id.</u>  Prosecutorial misconduct must permeate the entire trial to warrant vacating a conviction; isolated remarks are not enough to show that the defendant's substantial rights were prejudiced.  <u>United States v. Bergman</u>, — F.3d —, 2017 WL 1101404, at *16 (11th Cir. Mar. 24, 2017) (citing <u>United States v. Simon</u>, 964 F.2d 1082, 1086 (11th Cir. 1992), and <u>United States v. Paul</u>, 175 F.3d 906, 912 (11th Cir. 1999)).

Here, the trial transcript does not reflect that the prosecutor ever stated "we don't know what they are" in reference to deleted files.  The prosecutor did mention that a significant number of images were deleted from Petitioner's iPhone, and that those images were taken over the summer of 2009, when Petitioner had exclusive responsibility for his daughter. (Crim. Doc. 91 at 9).  However, that statement was consistent with the evidence, as Agent Marquis Pickett and Special Agent Greenmun testified that Petitioner deleted around 600 images from his iPhone during that time frame.  (Crim. Doc. 89 at 114-15, 171-72).  The prosecutor also mentioned that "there were … 300 file titles that [Special Agent Greenmun] found during the forensic examination, which were indicative of child pornography, that had been deleted from the particular system." (Crim. Doc. 91 at 11).  This remark was also consistent with the evidence.  Special Agent Greenmun testified that while examining Petitioner's Toshiba external hard drive, he found traces of 300 deleted files that had titles suggestive of child pornography.  (Crim. Doc. 89 at 177-78).  As such, the prosecutor did not misstate the evidence or imply that he knew of inculpatory evidence other than what was in the record.

Petitioner also alleges that the prosecutor made an improper inflammatory remark when he allegedly stated in closing argument that "we rescued [Petitioner's daughter] from this man." (Civ. Doc. 1 at 20).  The prosecutor did not quite say that. He stated that "the authorities were able to rescue the child from a difficult situation and to begin gathering evidence, which you have now seen." (Crim. Doc. 91 at 7).

A prosecutor may not attempt to inflame the jury by appealing to the jurors'
"passions or prejudices instead of to reason and to the law." Bergman, — F.3d —,
2017 WL 1101404 at *16 (citing Cunningham v. Zant, 928 F.2d 1006, 1020 (11th Cir.
1991)). However, the prosecutor's remark was not of that sort. The prosecutor's
statement that authorities "rescue[d] the child from a difficult situation" implied
nothing more than what the jury might naturally infer from the clear evidence that
Petitioner used his daughter to produce child pornography. As such, the prosecutor's
remark was not inflammatory.

Even if any of the above remarks were improper, they did not prejudice
Petitioner's substantial rights. The statements were so isolated that the Court
cannot say that they permeated the entire trial, Bergman, — F.3d —, 2017 WL
1101404 at *16, or that without the remarks there is a reasonable probability the jury
would have acquitted Petitioner, O'Keefe, 461 F.3d at 1350. Accordingly, relief on
this ground is due to be denied.

### C. Ineffective Assistance Claims

Petitioner raises several claims of ineffective assistance of counsel. To succeed
on a claim of ineffective assistance of counsel, a petitioner must show both (1) that
counsel's performance was deficient, and (2) that as a result of counsel's deficient
performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S.
668, 687 (1984). In determining whether counsel performed deficiently, the Court
adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d
1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the

circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id.   To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694.  In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Id. at 695.  However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

Where a defendant was represented by experienced counsel, as Petitioner was here at all stages, "the presumption that [counsel's] conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc). Of course, the performance of an experienced lawyer is not beyond scrutiny.  But the case law recognizes that "the more experienced an attorney is, the more likely it is that his decision to rely on his own experience and judgment in rejecting a defense"

is reasonable. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1040 (11th Cir. 1994) (quoting

<u>Gates v. Zant</u>, 863 F.2d 1492, 1498 (11th Cir. 1989)).

## 1.  Ground Two: Failure to Hire Expert Witnesses

Petitioner claims that counsel was ineffective because he should have hired a

raft of experts to testify at trial.  (Civ. Doc. 1 at 8-12; Civ. Doc. 25 at 12-21).  According

to Petitioner, counsel should have hired a computer forensics specialist, an expert on

<u>Dost</u>[6] factors, an "expert in human sexuality and family psychology," and a

psychologist.  The computer forensics specialist would purportedly have testified

about how a computer user could stop a file from downloading off Lime Wire, how

Petitioner's devices backed up files, how iTunes and Lime Wire interact with each

other, and "known issues with Lime Wire concerning the receipt of unwanted and

unrequested files, particularly of child pornography," (Civ. Doc. 1 at 10).  The <u>Dost</u>

expert would allegedly have testified that the pictures Petitioner took of his four-

year-old daughter were not lascivious, and that Petitioner took some of the photos

without aiming his iPhone (testimony that the Court has already found blatantly

false, <u>see</u> Crim. Doc. 131 at 96-97).  The "expert on human sexuality and family

psychology" would supposedly have testified that it's normal for parents to take

pictures of their children while directing them to display their genitalia.  And the

---

[6]      <u>See</u> <u>United States v. Dost</u>, 636 F. Supp. 828 (S.D. Cal. 1986) (articulating the
factors that define lasciviousness).  The <u>Dost</u> factors are the model for the Eleventh
Circuit's pattern jury instructions, but the Court of Appeals has not decided whether
they should be part of the law of this circuit.  <u>See</u> <u>United States v. Grzybowicz</u>, 747
F.3d 1296, 1306 n.8 (11th Cir. 2014).

psychologist would have purportedly testified that Petitioner lacked a sexual attraction to children.  Petitioner also claims counsel should have hired an expert in the "S.A.N.E. protocol"[7] to discuss unspecified flaws in the Child Protection Team interview of his daughter, a video of which the United States introduced at the sentencing hearing.  Petitioner provides nothing from these experts, such as a letter or an affidavit, to substantiate the testimony they supposedly would have given.

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[8]  "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995).  Therefore, "[e]ven if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (quotations omitted).  "The mere fact that other witnesses might have been available ... is not a sufficient ground to prove ineffectiveness of counsel." Waters, 46 F.3d at 1514.  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by

---

[7]    S.A.N.E. presumably stands for "Sexual Assault Nurse Examiner," and refers to protocols used by law enforcement to preserve evidence of sexual assault.

[8]    Decisions of the former Fifth Circuit Court of Appeals that were issued on or before September 30, 1981 are binding in the Eleventh Circuit Court of Appeals. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).

Here, Petitioner provides nothing to corroborate his claim that the various experts would have provided favorable testimony. "[S]peculation that the missing witnesses would have been helpful" "is 'insufficient to carry the burden of a habeas corpus petitioner.'" Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) (quoting Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985)). As such, Petitioner's allegations of ineffective assistance about uncalled witnesses are too speculative to warrant relief, or even an evidentiary hearing. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Nevertheless, even assuming that the uncalled experts would have testified as Petitioner alleges, it was either reasonable or not prejudicial for trial counsel not to have called them. As for the computer forensics specialist, the point of his testimony would have been to support Petitioner's theory that he did not knowingly retrieve child pornography. Even if it would have been a good idea for the defense to have its own computer forensics expert, there is not a reasonable likelihood it would have convinced the jury to acquit Petitioner of the receipt and possession charges. There was abundant evidence that Petitioner deliberately sought out child pornography, independent of anything the computer forensics specialist could have explained away. This evidence included the "Search.pages" document listing search terms germane to

child pornography, as well as the Maxell CD, which contained child pornography and child erotica organized into three user-created folders – something that Petitioner could not have done accidentally.

As for the "Dost" expert and the "expert on human sexuality and family psychology," it is not reasonably likely that they would have persuaded the jury that the pictures of Petitioner's four-year-old daughter were not lascivious. The United States introduced the pictures into evidence, the jury evaluated them, and they were patently pornographic (as the jury found through its verdict). Moreover, the "Dost" expert's supposed testimony that Petitioner took some of the lewd pictures without aiming his iPhone would have been frivolous. The Court has already found that such testimony was so blatantly false that it "was an affront to the court, to the jury, and to everybody who was in the courtroom." (Crim. Doc. 131 at 96-97).

It also would have been reasonable for trial counsel not to call a psychologist to testify that Petitioner lacked a sexual interest in children. Petitioner states that before his sentencing hearing, Harry Spears, a licensed mental health counselor, evaluated him and reported that he found no indication that Petitioner was sexually attracted to children. (Civ. Doc. 1 at 12). Petitioner claims that another psychologist, George Deitchman, made the same finding before his state court trial. Petitioner thinks that their testimony might have persuaded the jury that he did not intentionally receive, produce, or possess child pornography. But Petitioner omits the fact that Mr. Spears also reported that Petitioner may not have "present[ed] himself completely honestly on the test." (Crim. Doc. 131 at 20, 30). As Mr. Spears

concluded in his report, Petitioner "had difficulty responding truthfully[,]" and he may have tried to manipulate the results of the evaluation.  (See Civ. Doc. 8 at 17). Indeed, the Court observed that "there are a couple of things in [Mr. Spears's] report … that actually are not necessarily favorable to Mr. Cowan." (Crim. Doc. 131 at 154). In light of that fact, a reasonable attorney could easily have concluded it would be unwise to present testimony that his client lacked a sexual interest in children, only for it to be impeached by evidence that his client lied on an assessment to influence its results.

Finally, regarding an expert in the "S.A.N.E. protocol," Petitioner simply alleges that there were unspecified flaws in the Child Protection Team interview of his daughter.  Petitioner does not identify what testimony the S.A.N.E. expert would have given, what flaws existed in the interview, or how it would have been relevant to sentencing.

Petitioner's complaints about uncalled expert witnesses are vague, speculative, and conclusory.  As such, they do not support a claim that counsel gave ineffective assistance. See Tejada, 941 F.2d at 1559; Johnson, 256 F.3d at 1187.  Petitioner's allegations do not overcome "'[the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" Chandler, 218 F.3d at 1315 (quoting Strickland, 466 U.S. at 689-90).  The record further refutes any suggestion that Petitioner suffered prejudice.  Accordingly, relief on Ground Two is due to be denied.

### 2.  Ground Three:  Whether Counsel Was Unprepared for Trial

Petitioner alleges that counsel was unprepared for trial because he met with him only once, on the Saturday before the trial began.  (Civ. Doc. 1 at 14).  The record refutes that claim.  Petitioner and his attorney were present together for several pretrial hearings and conferences.   (See, e.g., Crim. Doc. 95 (status conference discussing negotiations over a plea or stipulated facts bench trial); Crim. Doc. 96 (status conference discussing pretrial matters); Crim. Doc. 98 (pretrial status conference)).  The record of those conferences reflects that Petitioner and his counsel had additional out-of-court meetings, in which they explored the possibility of a negotiated guilty plea, a stipulated-facts bench trial, and a jury trial, as well as the strategic implications of each choice.  (E.g., Crim. Doc. 95 at 6-11).  The transcripts further indicate that Petitioner and counsel had out-of-court meetings to discuss trial strategy months in advance, as reflected by counsel's announcement at an August 5, 2010 status conference that Petitioner would testify at trial, and that much of their defense would be based on his testimony.  (Crim. Doc. 96 at 26).  After it became clear that Petitioner was determined to go to trial, counsel moved twice to continue the trial date in order to better prepare the defense.  (See Crim. Doc. 40; Crim. Doc. 45).  Counsel specifically requested the second continuance "to adequately prepare Mr. Cowan for his testimony and to fully prepare against the evidence in this case." (Crim. Doc. 96 at 26).

Once the trial was underway, counsel did not strike the Court as unprepared.  See Broadwater v. United States, 292 F.3d 1302, 1304 (11th Cir. 2002) (where the same judge presiding over a § 2255 motion also presided over the trial, "some

situations may be resolved by the district court's personal knowledge or recollection."). Counsel probed the government's case for weaknesses through cross examination of its witnesses, guided Petitioner through presenting his side of the story to the jury, and gave a closing argument emphasizing the importance of the proof-beyond-a-reasonable-doubt standard. Thus, the record contradicts Petitioner's generic claim that counsel was unprepared.

Petitioner also claims that counsel asked him to prepare a witness list, but that counsel failed to call anyone from that list. (Civ. Doc. 1 at 14). The record undermines this allegation. Counsel stated during a pretrial conference, in Petitioner's presence, that Petitioner would "be a witness at the trial. And we're going to have a lot of our defenses based upon his testimony." (Crim. Doc. 96 at 26). This suggests that counsel and Petitioner had decided that Petitioner would be their main (if not only) witness.

Additionally, Petitioner fails to identify what witnesses he asked counsel to call, except for two. Petitioner says that "[o]ne of those witnesses was Alex Wills, a Mac specialist at the Apple Store who had examined one of Mr. Cowan's computers." (Civ. Doc. 1 at 14). The second was John Connelly, a mental health therapist. (Civ. Doc. 13 at 15). In his Reply, Petitioner says that Wills would have explained how the Time Machine back-up program works, and that Wills had "serviced the Petitioner's computer during the time that the alleged incident occurred" but "did not observe any child pornography." (Civ. Doc. 13 at 14-15).[9] Petitioner provides nothing from Wills

---

[9]   Petitioner does not identify which of his three computers Wills serviced. If Wills only serviced Petitioner's Apple laptop, it would not change the fact that the charged videos and images were on the 17-inch and 24-inch iMac desktops, as well as

to substantiate this testimony. Besides, the fact that Wills did not observe child pornography on a particular computer would not have meant it did not exist. As for Connelly, Petitioner claims in his Reply that he "would have testified that he had communicated with the Petitioner about his sexual relationships and would have been able to verify that the Petitioner had no sexual interest in children." Id. at 15. Again, Petitioner provides nothing from Connelly to substantiate this testimony. In any event, it is not reasonably likely that Connelly's testimony would have persuaded the jury that Petitioner was not guilty, given the strong evidence that Petitioner sought out child pornography and used his own daughter to produce more.

Petitioner's conclusory and unsupported allegations are not enough to overcome the strong presumption that counsel performed reasonably, nor are they enough to warrant so much as an evidentiary hearing. See Tejada, 941 F.2d at 1559. Relief on this ground is therefore due to be denied.

### 3. Ground Four: Whether Counsel Was Distracted by the Death of His Brother-in-Law

Petitioner claims that counsel gave ineffective assistance because he was distracted at trial by the death of his brother-in-law. (Civ. Doc. 1 at 16). Petitioner claims that the family member's death caused counsel to lose perspective on the importance of his trial. As a result, Petitioner suggests that counsel missed "vital objections" and cut short the defense's presentation so he could attend the funeral. Petitioner states that counsel "left out some elements he told Mr. Cowan he was going

---

the external hard drives. In any event, the United States did not indict Petitioner for having any child pornography on the laptop.

to present" and that the "closing argument was short and weak." (Id.). Petitioner never identifies what "elements" counsel supposedly left out, or how the closing argument was deficient.

It is true that counsel learned of a death in the family during Petitioner's trial. However, there was no indication that it detrimentally affected counsel's performance. To the contrary, counsel was focused and engaged, as reflected by the objections he raised,[10] and his success in persuading the Court to instruct the jury that Petitioner must have "willfully" used a minor to engage in explicit conduct to be guilty of Counts Four and Five (production of child pornography). (Crim. Doc. 90 at 184-85, 188-89). Counsel also cross-examined Special Agent Greenmun in an effort to create doubt about whether Petitioner would have known an illicit file's title before downloading it, and whether Lime Wire could have generated illicit search results in response to innocuous search terms. (Crim. Doc. 89 at 230-48). Thus, the record undermines Petitioner's allegation that counsel was distracted during trial.

Nor can the Court say that counsel's closing argument was "short and weak," so as to amount to deficient performance.

> [C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should "sharpen and

---

[10]     As the United States noted, counsel raised several objections during trial. (E.g., Crim. Doc. 89 at 53-54 (objecting to referring to Petitioner's daughter as the "victim"); 145-46 (objecting that document custodian's testimony lacked a foundation); Crim. Doc. 90 at 94 (objecting to cross-examining Petitioner about a report not in evidence); 111 (objecting to relevance of Special Agent Greenmun's opinion); 123-24 (objecting to questions concerning parts of Petitioner's interview with detectives where he invoked his Fifth Amendment rights)).

clarify the issues for resolution by the trier of fact," but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. Judicial review of a defense attorney's summation is therefore highly deferential[.]

Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) (internal citations omitted). Counsel's closing argument emphasized the meaning and significance of the government's burden of proof. (Crim. Doc. 91 at 19-24). Counsel then sought to cast doubt on whether Petitioner willingly used his daughter to produce depictions of explicit conduct and whether he knowingly obtained child pornography. (Id. at 24-37). Based on this record, counsel's summation was not so wanting that it fell outside the "wide range of professionally competent assistance." Weeks, 26 F.3d at 1036.

Moreover, the record contradicts Petitioner's allegation that counsel cut short the defense's presentation so he could attend his brother-in-law's funeral. While counsel requested that another attorney be present with Petitioner if the jury's deliberations extended past 4:30 p.m., the Court noted that trial counsel "has very conscientiously stayed here and argued to the jury and is ready to wait for the jury's call." (Crim. Doc. 91 at 70). Indeed, the record reflects that counsel postponed his travel plans so that he could finish the trial. (See Crim. Doc. 90 at 152-53; Crim. Doc. 91 at 78). Counsel was present when the jury returned its verdict, and the Court commended the parties for doing a "professional job of presenting this case." (Crim. Doc. 91 at 71). In light of the foregoing, the record refutes the claims in Ground Four.

### 4. Ground Five: Whether Counsel Failed to Make Vital Objections

Petitioner also alleges that counsel was ineffective for failing to make three "vital objections." (Civ. Doc. 1 at 16, 18-19). First, Petitioner claims counsel should have objected to improper prosecutorial remarks, which are the subject of Ground Six and Part III.B, supra. For the reasons discussed in Part III.B., the prosecutor's statements were neither misleading nor inflammatory, nor did they prejudice Petitioner. As such, counsel could not have been ineffective for not raising unmeritorious objections to those remarks. See Bates v. Sec'y, Fla. Dep't of Corr., 768 F.3d 1278, 1299 (11th Cir. 2014) (counsel is not ineffective for not raising an unmeritorious objection, which "might end up backfiring by highlighting [statements] the jury might have otherwise ignored completely").

Second, Petitioner claims counsel should have objected to Special Agent Greenmun offering his opinion that the images of Petitioner's daughter were pornographic. On direct appeal, the Eleventh Circuit addressed whether Special Agent Greenmun gave improper opinion testimony about the pornographic nature of the pictures, but it did so under the standard of plain error review because counsel did not preserve the issue. (Crim. Doc. 137 at 3-5). As the Eleventh Circuit noted, however, "[a] police officer witness's conclusion that images are pornographic in nature does not require qualification as an expert, and is admissible subject to the Rule 701 requirements." (Id. at 4) (citing United States v. Smith, 459 F.3d 1276, 1297 n.18 (11th Cir. 2006)). In light of Smith, the court held that Petitioner could not "meet step one of plain error review" (id. at 5), meaning it was not error for Special Agent

Greenmun to opine that the pictures were pornographic.[11]  In turn, because there was no error, counsel could not have been ineffective for not objecting to Special Agent Greenmun's permissible opinion testimony.  See Bates, 768 F.3d at 1299.

Third, Petitioner claims that counsel should have objected when the United States "went beyond the indictment in mentioning a data CD, which they had agreed in pre-trial sessions that they would not do."  (Civ. Doc. 1 at 18).  Petitioner is presumably referring to the Maxell CD containing three folders of unindicted child pornography or child erotica. The United States introduced the CD in its rebuttal case to refute Petitioner's claim that he did not knowingly receive or possess child pornography.

Counsel was not ineffective for not objecting to the Maxell CD because such an objection would not have been meritorious.  For one, Petitioner does not identify any pre-trial agreement not to refer to the Maxell CD.  No evidence of such an agreement exists in the record of any of the Court's six pretrial conferences.  Nor is there any reason why the United States would have refrained from referring to the Maxell CD. The CD was inextricably intertwined with the rest of the government's case because it "tend[ed] to corroborate, explain, or provide necessary context for evidence regarding the charged offense[s]" of receipt and possession of child pornography. United States v. Bush, — F. App'x —, 2016 WL 7383971, at *1 (11th Cir. 2016) (citing

---

[11]    "Plain error is: (1) an error; (2) that is plain; and (3) affects substantial rights." (Id. at 3) (citing United States v. Turner, 474 F.3d 1265, 1275-76 (11th Cir. 2007)). Thus, the first step of plain error review is to determine whether there was an error in the first place.  If an argument fails to "meet step one of plain error review" (id. at 5), it means there was no error to begin with.

United States v. Jiminez, 224 F.3d 1243, 1250 (11th Cir. 2000)).  Nor did the Court grant any motions in limine or motions to suppress with respect to the CD.  Counsel thus had no basis for objecting to the CD's relevance or admissibility.  Because the United States could properly rely on the CD to rebut Petitioner's claim about not intentionally receiving child pornography, it was neither unreasonable nor prejudicial for counsel not to have objected.

Petitioner's allegations of ineffective assistance in Ground Five are due to be denied.

### 5.  Ground Seven:  Counsel's Failure to Object to the PSR

Petitioner claims that sentencing counsel, Noel Lawrence, was ineffective because he did not object to the factual portion of the PSR.  (Civ. Doc. 1 at 22).  The record refutes this claim.  At the sentencing hearing, the Court asked the parties whether there were "any errors, omissions, incorrect statements in the PSR that we need to look at before we start to get specific here with guideline calculations."  (Crim. Doc. 131 at 34).  Counsel conferred with Petitioner, after which counsel stated only that "the date of graduation from college might be off," but otherwise "there [were] no material factual errors."  (Id. at 35).

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."  Strickland, 466 U.S. at 691.  Since Petitioner himself did not advise counsel of any material factual errors in the PSR,

the Court cannot conclude that sentencing counsel performed deficiently by not making such an objection.  Relief on Ground Seven is due to be denied.

### 6. Ground Eight:  Whether Motions and Appeals Were "Poorly Written"

Petitioner broadly claims that sentencing counsel did a poor job writing his motion for a new trial, and that the same lawyer did a poor job writing his appellate briefs.  (Civ. Doc. 1 at 24-27).

Regarding the motion for a new trial (Crim. Doc. 106), Petitioner complains that one sentence contained a typo, and other sentences, paragraphs, or ideas were not properly expressed.  (Civ. Doc. 1 at 24).  This claim lacks merit.  The Court denied the motion for a new trial on the merits, not because of any defects in the motion itself.  The trial was free of prejudicial errors, the evidence of Petitioner's guilt was overwhelming, and the Court was unwilling to disturb the jury's verdict under those circumstances.  "Courts are to grant [motions for a new trial] sparingly and with caution, doing so only in those really 'exceptional cases.'"  United States v. Cox, 995 F.2d 1041, 1043 (11th Cir. 1993) (citation omitted).  To grant a motion for a new trial based on the weight of the evidence, the evidence must "preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand."  Id. This was not one of those cases.  Accordingly, Petitioner cannot establish a reasonable likelihood that the Court would have granted a motion for a new trial no matter how eloquently written.

Regarding counsel's performance on appeal, Petitioner lists several issues that counsel supposedly failed to develop, but he does not explain what arguments

appellate counsel should have advanced, or why there is a reasonable probability such arguments would have succeeded.  (See Civ. Doc. 1 at 27).

Strickland applies when reviewing the effectiveness of appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000).  Thus, a petitioner raising an ineffective-assistance claim relating to the performance of appellate counsel must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) the outcome of his appeal would have been different, but for the unreasonably deficient performance.   Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  Smith, 528 U.S. at 288.  "[I]t is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."  Id.

Petitioner faults appellate counsel for focusing on the element of mens rea when challenging the sufficiency of the evidence regarding the possession and receipt convictions.  (Civ. Doc. 1 at 24) (citing Crim. Doc. 137 at 7) ("Cowan's only argument regarding sufficiency of the evidence on appeal is that insufficient evidence supported a conclusion that he had the requisite mens rea to commit the receipt and possession offenses.").  However, counsel's decision was reasonable.  The most contested issue at trial was whether or not Petitioner acted knowingly or intentionally.  Indeed, there could be little question about the sufficiency of the evidence pertaining to the conduct elements of the crimes. The videos and images charged in the Indictment were located

on Petitioner's devices, and they unquestionably depicted child pornography.  As such, it was reasonable for appellate counsel to focus his sufficiency-of-the-evidence argument on the issue of <u>mens</u> <u>rea</u>.

Petitioner also faults appellate counsel for abandoning or under-developing an argument that (1) the Court failed to adequately explain its sentence, (2) the Court erroneously applied the U.S.S.G. § 2G2.2(b)(7)(D) sentencing enhancement for possessing more than 600 images, and (3) the Court erroneously applied the U.S.S.G. § 3C1.1 sentencing enhancement for obstruction of justice.  (Civ. Doc. 1 at 24-25). Counsel's abandonment (or under-development) of these arguments did not prejudice Petitioner because the Eleventh Circuit rejected these arguments on the merits anyway.  (Crim. Doc. 137 at 10) (noting that "Cowan abandoned any argument that the district court failed to adequately explain his sentence," but going on to say that the Court sufficiently explained how the sentencing factors applied to Petitioner); (<u>id.</u> at 19-20) (noting that Cowan's only challenge to the § 2G2.2(b)(7)(D) enhancement "is that the district court failed to account for images that were contained only in temporary internet, or cache, folders," but noting that Petitioner possessed the equivalent of 825 images based on 11 videos alone); (<u>id.</u> at 20-21) ("Cowan abandoned any argument concerning the two-level § 3C1.1 obstruction of justice enhancements," but "[e]ven if properly raised, Cowan's argument lacks merit.").

Finally, Petitioner faults counsel for (1) inadequately challenging the U.S.S.G. § 2G2.1(b)(2)(A) sentencing enhancement for committing a sexual act, (2) inadequately challenging the § 3D1.4 multiple count adjustment, and (3) not citing a

pair of non-binding Tenth Circuit decisions.  (Civ. Doc. 1 at 25-27).  With respect to the guidelines calculations, Petitioner does not explain what arguments counsel should have advanced, or why there is a reasonable likelihood such arguments would have succeeded.  With respect to the pair of Tenth Circuit cases, Petitioner does not explain why there is a reasonable likelihood that they would have persuaded the Eleventh Circuit to reverse his conviction and sentence.

Petitioner's conclusory, scattershot allegations of ineffective-assistance-of-appellate-counsel are not enough to warrant relief.  Tejada, 941 F.2d at 1559.  Having made "no showing regarding the effect, if any, that a different brief would have had on the outcome of proceedings," Petitioner has "not establish[ed] a Strickland violation on the part of his appellate counsel."  Johnson, 256 F.3d at 1188.  Accordingly, relief on Ground Eight is due to be denied.

### D. Ground Nine:  Whether the Indictment and Evidence Regarding Counts Six and Seven Were Insufficient to Establish a Nexus with Interstate Commerce

Petitioner alleges that Counts Six and Seven of the Indictment (regarding possession of child pornography on the Toshiba and Maxtor external hard drives) failed to properly allege a connection with interstate commerce.  (Civ. Doc. 1 at 29-30; Civ. Doc. 25 at 21-30).

18 U.S.C. § 2252(a)(4)(B) provides that it is a crime to

knowingly possess[ ], or knowingly access[ ] with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction [of child pornography] that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been

mailed or so shipped or transported, by any means including by
computer[.]

Counts Six and Seven of the Indictment alleged that Petitioner "did knowingly
possess one (1) or more matters which contained visual depictions [of child
pornography] which were produced using materials which have been shipped or
transported in or affecting interstate or foreign commerce[.]" (Crim. Doc. 1 at 5-6)
(emphasis added). The materials that allegedly "produced" the child pornography
were the Toshiba and Maxtor external hard drives on which the images were stored.
See id. Neither the Indictment nor the evidence identified the equipment that
initially recorded those pornographic videos or images.

Petitioner does not dispute that the Maxtor and Toshiba hard drives were
manufactured in China, and thus that they were objects of interstate commerce.
Rather, Petitioner argues that the external hard drives merely stored the illicit
images; they did not "produce" them. As such, Petitioner alleges that the Indictment
and the evidence failed to satisfy § 2252(a)(4)(B)'s interstate commerce requirement.

Petitioner procedurally defaulted this claim. As noted before, "a defendant
generally must advance an available challenge to a criminal conviction or sentence
on direct appeal or else the defendant is barred from presenting that claim in a §
2255 proceeding." Lynn, 365 F.3d at 1234 (citing McCoy, 266 F.3d at 1258).
Petitioner could have argued on direct appeal that the Indictment and the evidence
failed to establish the requisite connection with interstate commerce, but he did not.

34

As such, Petitioner cannot raise this claim for the first time on collateral review.[12]

In any event, Petitioner's underlying claim lacks merit. The Eleventh Circuit has "held that the Government can satisfy the interstate-commerce requirement of child pornography statutes by showing that the computer equipment on which the images are <u>stored</u> traveled in interstate commerce, <u>regardless of how the images themselves were originally produced</u>." <u>United States v. Penton</u>, 380 F. App'x 818, 820 (11th Cir. 2010) (emphasis added) (citing <u>United States v. Maxwell</u>, 446 F.3d 1210, 1211-12, 1219 (11th Cir. 2006)).

In his supplemental memorandum, Petitioner also argues, for the first time, that the conduct underlying Counts Four and Five (concerning the production of child pornography, in violation of 18 U.S.C. § 2251(a)) was not tied to interstate commerce. (Civ. Doc. 24 at 23-30). This is so, Petitioner contends, because "[t]he activity involved all took place in Cowan's home and car, and the actual images produced never left Cowan's possession … nor was there any intent or plan that they be transmitted or transported in interstate commerce." (<u>Id.</u> at 24). Under Petitioner's construction of §

---

[12]     A petitioner can avoid a procedural default either by showing (1) cause for and prejudice from the default, or (2) that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Lynn</u>, 365 F.3d at 1234 (quotation omitted). Petitioner invokes the "actual innocence" exception, alleging that the absence of a connection with interstate commerce renders Petitioner "actually innocent." (Civ. Doc. 25 at 30). However, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995)). Petitioner's "actual innocence" claim fails to do that. Any deficiency in the government's case regarding the nexus between Petitioner's conduct and interstate commerce would have been apparent no later than the end of trial – back in 2010. Because Petitioner cannot point to any newly-discovered evidence, he cannot use "actual innocence" to avoid the procedural default.

2251(a), it is not enough to satisfy the interstate commerce element if child pornography was produced using materials that were transported in interstate commerce. The government also must prove that the defendant intended for the depiction to be transported in or affecting interstate commerce. (Id. at 26-27).[13]

Circuit precedent rejects Petitioner's interpretation of § 2251(a). It is sufficient to satisfy the interstate commerce element of § 2251(a) if the images were produced using materials that were transported in or affecting interstate or foreign commerce. United States v. Parton, 749 F.3d 1329, 1330-32 (11th Cir. 2014) (rejecting defendant's argument that there was an insufficient relation to interstate commerce where "the sole interstate commerce nexus asserted by the government is that the electronic device that Parton used to make the videos or photos traveled in interstate commerce."); United States v. Culver, 598 F.3d 740, 747 (11th Cir. 2010) (there was a sufficient connection to interstate commerce where the government "proved that the magnetic tape … at issue was manufactured in Japan and transported to Dothan, Alabama."). The cases Petitioner cites, such as United States v. Kapordelis, 569 F.3d 1291 (11th Cir. 2008), and United States v. Bell, 5 F.3d 64 (4th Cir. 1993), are not to the contrary.[14] Neither contradicts or overrules Parton and

---

[13]     As with the interstate commerce challenge to Counts Six and Seven, Petitioner procedurally defaulted this claim. Additionally, Petitioner neither raised this claim in his Motion to Vacate (see Civ. Doc. 1 at 29-30) (challenging only Counts Six and Seven), nor did he obtain leave to amend the Motion to challenge Counts Four and Five. Thus, this claim is not properly before the Court.  Still, it fails on the merits.

[14]     Petitioner also cites United States v. Husband, 119 F. App'x 475 (4th Cir. 2005), and United States v. Crews, 28 F. App'x 247 (11th Cir. 2002), to suggest that child pornography must actually cross state lines, or the defendant must so intend.

Culver. In fact, Kapordelis contradicts Petitioner's interpretation of § 2251(a). There, the court dismissed the argument that the government had to prove "that [the defendant] produced the image with the intent that it be transported across any border." 569 F.3d at 1306 n.12. The court explained that there are three ways in which production of child pornography can be punishable:

> [1] "if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed," [2] "if such visual depiction has actually been transported in interstate or foreign commerce or mailed," or [3] "if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer."

Id. (bracketed numbers added). The third method is an independent basis for satisfying the interstate commerce element of § 2251(a). Here, because the images underlying Counts Four and Five were produced using a Chinese-manufactured iPhone, the government satisfied § 2251(a)'s interstate commerce element.

### E. Ground Ten:  2013 Changes to United States Sentencing Guidelines

In his last ground for relief, Petitioner states that in February 2013, "the United States Sentencing Commission recommended sweeping changes to the guidelines for the sentencing of child pornography crimes." (Civ. Doc. 1 at 31).

---

Petitioner's reliance is misplaced. In Husband, the court's statute-of-limitations analysis focused on when the images crossed state lines (as the final element of the offense) because that was the jurisdictional basis invoked in Husband's indictment. 119 F. App'x at 481 & n.3. Nowhere in Husband or Crews did the court suggest that a conviction under § 2251(a) could stand only if child pornography crosses state lines or if the defendant so intends.

Petitioner "request[s] that Mr. Cowan's sentencing be vacated and changed to match those new guidelines."  (Id.).

That the Sentencing Commission recommended changes to the child pornography sentencing guidelines provides no basis for relief.  Indeed, the Eleventh Circuit has "previously rejected attacks on the Sentencing Guidelines premised on" a December 2012 Sentencing Commission report[15] concerning child pornography offenses.  United States v. Lightman, — F. App'x —, 2017 WL 1192199, at *3 (11th Cir. Mar. 31, 2017) (citing United States v. Cubero, 754 F.3d 888, 900 (11th Cir. 2014), and United States v. Carpenter, 803 F.3d 1224, 1235-36 (11th Cir. 2015)).  Challenges to the validity of the guidelines based on the report are a "non-starter," Carpenter, 803 F.3d at 1235-36, and a district judge may disregard the report in determining a defendant's sentence, Cubero, 754 F.3d at 900.  Accordingly, Petitioner's request for relief under Ground Ten is due to be denied.

Having examined each of Petitioner's claims for relief, and finding each one to lack merit, it is hereby **ORDERED:**

1.  Petitioner Robert Allan Cowan's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2.  The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

---

[15]  See United States Sentencing Commission, Report to Congress: Federal Child Pornography Offenses (Dec. 2012) ("the Report") available at http://www.ussc.gov/sites/default/files/pdf/news/congressionaltestimony-and-reports/sex-offense-topics/201212-federal-child-pornographyoffenses/Full_Report_to_Congress.pdf.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,"  Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'"  Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Petitioner has not made the requisite showing in these circumstances.  Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 18th day of April, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

Lc 19

Copies:

Counsel of record
Petitioner Robert Allan Cowan